```
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

      KENNETH L. BRYAN                              CASE NO. 05-62017
      ETHEL L. BRYAN
                                                    Chapter 13
                        Debtors
--------------------------------------------------------
AMERICAN GENERAL FINANCIAL
SERVICES, INC.

                        Plaintiff

             vs.                                    ADV. PRO. NO. 06-80013

KENNETH L. BRYAN, ETHEL L. BRYAN;
THE UNITED STATES OF AMERICA by and
through the UNITED STATES DEPARTMENT
OF AGRICULTURE RURAL HOUSING; and
MARK SWIMELAR, ESQ., as Chapter 13
Trustee

                        Defendants
--------------------------------------------------------
```

APPEARANCES:

L. DAVID ZUBE, ESQ.
Attorney for Defendants Kenneth L. Bryan
  and Ethel L. Bryan
59 Court Street - 5th Floor
Binghamton, New York 13901

E. LISA TANG, ESQ.
Attorney for American General Financial
  Services, Inc.
118 Huntersfield Rd.
Delmar, NY 12054

U.S. STATES ATTORNEY                         WILLIAM F. LARKIN, ESQ.
Attorneys for U.S. DEPARTMENT OF             Of Counsel
  AGRICULTURE
P.O. Box 7198, 100 S. Clinton Street
Syracuse, New York 13261-7198

LYNN HARPER WILSON, ESQ.
Staff Attorney, Chapter 13 Trustee
250 S. Clinton Street, Suite 203
Syracuse, NY 13202


Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge


**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**


Under consideration by the Court is a motion filed by Kenneth L. Bryan and Ethel L. Bryan ("Debtors") on March 24, 2006, requesting default judgment or summary judgment on counterclaims asserted by the Debtors against American General Financial Services, Inc. ("American General") on February 8, 2006, with respect to an adversary proceeding commenced by American General on January 10, 2006, against the Debtors, as well as against the U.S.D.A. Rural Housing Service ("USDA") and Mark W. Swimelar, Esq. ("Trustee"). On April 7, 2006, a reply to the Debtors' motion was filed on behalf of the USDA, indicating that it joined in the Debtors' motion. Also on April 7, 2006, American General filed its response in opposition to the Debtors' motion. On April 10, 2006, American General also filed opposition to the joinder of the USDA.

On April 11, 2006, the Court heard oral argument by the parties at its regular motion term in Binghamton, New York. At the hearing, the Court denied the Debtors' motion for default judgment with respect to what the Debtors had labeled as "counterclaims" and which American General labeled as affirmative defenses to which no reply was necessary.[1] The Court adjourned

---

[1] In denying the Debtors' motion for default judgment, the Court noted the preference of the courts to resolve matters based on the merits of the case, rather than based on a default in answering a complaint or, in this case, counterclaims. *See Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001).

the Debtors' motion for summary judgment to May 9, 2006, in order to allow the parties an opportunity to file memoranda of law on the issue of whether the confirmation of the Debtors' chapter 13 plan ("Plan") by Order of this Court on August 3, 2005, was *res judicata* with respect to the issues raised in the Debtors' counterclaims. Following further oral argument on May 9, 2006, the Court again adjourned the motion to June 13, 2006, in order to consider the relevancy of its prior decision in *In re Coss*, Case No. 02-65893 (Bankr. N.D.N.Y. July 14, 2005) to the matter presently before it. The parties were afforded an opportunity for further oral argument on June 13, 2006, at which time the Court agreed to take the matter under submission.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(A), (K) and (O).

## FACTS

The Debtors filed a voluntary petition ("Petition"), along with their Plan, pursuant to chapter 13 of the Code on March 24, 2005. According to Schedule A - Real Property, filed with the Petition, the Debtors own real property at 512 Hawleyton Road, Binghamton, New York (the "Premises"), which they valued at $45,000. According to Schedule D - Creditors Holding Secured Claims, the USDA was listed as holding a secured claim of $67,198.13 based on three mortgages on the Premises executed by the Debtors. American General was listed as a secured

creditor. However, the Debtors listed American General's claim of $28,532 as totally unsecured based on the value of the Premises. Robert B. Githin [sic], Esq. was listed on Schedule D as representing American General.

On May 12, 2005, the USDA filed a proof of claim in the amount $67,096.89, which it identified as secured based on debt that it identified as having been incurred on May 28, 2004. Attached to the proof of claim was a reamortization agreement, referring to a promissory note dated January 19, 1988, with an outstanding balance of $31,444.85 [2]; a reamortization agreement, dated May 28, 2004, referring to a promissory note dated June 30, 1978, with an outstanding balance of $498.66; a reamortization agreement dated May 28, 2004, referring to a promissory note dated November 15, 1979, with an outstanding balance of $620.11,and a reamortization agreement dated May 28, 2004, referring to a promissory note dated November 21, 1986, with an outstanding balance of $3,476.48. Also attached to the proof of claim were copies of the respective mortgages executed by the Debtors, as well as a "Subsidy Repayment Agreement" referencing § 521 of Title V of the Housing Act of 1949.

According to the terms of the Subsidy Repayment Agreement (¶¶ 3and 4), the Debtors agreed that

> the subsidy is due and payable upon the transfer of title or non-occupancy of the property by me (us). I (we) understand that the real estate [identified as Box 232, Upper Penn. Ave., Rd #2, Binghamton, New York 13903] is the only security for the subsidy received. I (we) further understand that I (we) will not be required to repay any of the subsidy from other than the value (as determined by the Government) of the real estate . . .

---

[2] The mortgage dated January 19, 1988, also refers in the "Being clause" to a mortgage recorded in the Broome County Clerk's Office on November 17, 1982. However, no documentation regarding the mortgage is included in the proof of claim filed on behalf of the USDA.

5

* * *

> I (we) understand that so long as I (we) continue to own the property and occupy the dwelling as my (our) residence, I (we) may repay the principal and interest owed on the loan and defer repaying the subsidy amount until title to the property is conveyed or the dwelling is no longer occupied by me (us). If such a request is made, the amount of subsidy to be repaid will be determined when the principal and interest balance is paid.

The Debtors' Plan provides for monthly payments of $195 over 36 months at a dividend of not less than 5%. With respect to American General, the Plan provides under the heading of "Lien Avoidance," "The following liens shall be avoided pursuant to 11 U.S.C. 522(f), or other applicable sections of the Bankruptcy Code: Creditor: **American General Home Equity**, Amount claimed: **$28,532**." It goes on to state that

> The mortgage loan claim of **American General Home Equity (2nd mortgage)** against the debtors' real estate is wholly unsecured and is to be avoided, to be treated for purposes of payment of the claim solely as an unsecured claim. Within ten days of service upon **American General Home Equity** of a copy of the Order of Confirmation of this plan, **American General Home Equity** shall prepare and submit to the Chapter 13 Trustee a duly executed Discharge of Mortgage, which Discharge shall be held in escrow by the Trustee to be released to **American General Home Equity** upon written request of **American General Home Equity** upon dismissal of this Chapter 13 case or conversion to Chapter 7, or to be released to the debtors for recording upon written request of the debtors after completion of this Chapter 13 Plan.

¶ 9 of the Plan.

Under the heading of "Direct Payments - The debtor shall make regular payments directly to the following creditors: Creditor: **USDA Rural Housing Service** - residential mortgae [sic] payment." ¶ 12 of the Plan. There is no mention in the Plan of the amount of the USDA's claim or the amount of the monthly payments.

The hearing on confirmation of the Debtors' Plan was initially scheduled to be held on June 7, 2005. By letter dated June 2, 2005 (Case Docket No. 8), Robert B. Gitlin, Esq. ("Gitlin"),

6

on behalf of American General, requested that the confirmation hearing be adjourned to July 12, 2005 "to allow American General Home Equity, Inc. further time to object to the confirmation. It is American General's position that its second mortgage is secured. American General is in the process of gathering its appraisal of the property, with the cooperation of the debtors." Apparently in response to Gitlin's letter, Debtors' counsel sent him a letter, dated June 6, 2005, stating that he was "taking the liberty of enclosing for your reference a copy of the Proof of Claim filed by the USDA Rural Housing Service, showing the debt due on the mortgages senior to your clients." *See* Exhibit attached to Debtor-Defendants' Memorandum, filed May 4, 2006 (Adv.Pro. Docket No. 17). By letter dated July 1, 2005, addressed to Debtors' counsel, Gitlin indicated that "[b]ased upon the claim of the government, it appears that there is no equity to support American General's security in the home. Accordingly, no objection will be filed."

The Court signed the Order of Confirmation on August 3, 2005. American General was identified as "Secured Modified" with respect to its 4th mortgage. Its claim of $28,532 was identified as having a value of "0." *See* ¶ 1(h) of the Order of Confirmation. The Order also provides for direct payments to the USDA Rural Housing on its 1st, 2nd, 3rd mortgages in the amount of $67,097. *Id.* at ¶ 1(l). Paragraph 4, of what has been described by American General's present counsel, E. Lisa Tang, Esq. ("Tang"), as a "form" order, provides that "Secured claims that are modified shall be paid in full the net amount due as of the date of filing or the value of the collateral to which creditor's lien attaches, with any balance to be treated as unsecured non-priority claim, whichever is less. Secured creditors shall retain their liens unless ordered otherwise." There is no specific provision in the Order requiring American General to execute a Discharge of Mortgage to be held by the Trustee in escrow. However, the Order does provide

that "the Debtors' Plan, and as further modified by this Order, is confirmed with payment to be made to Mark W. Swimelar, Trustee." *See* Order of Confirmation at ¶ 1.

A proof of claim was filed on behalf of American General on October 6, 2005,[3] in the amount of $27,160.89, based on its mortgage dated May 10, 2001. The proof of claim indicates that it is a secured claim based on a valuation of the Premises of $65,000, despite the prior confirmation of the Debtors' Plan on August 3, 2005, which determined that the value of the Premises was $45,000.

As noted previously, on January 10, 2006, approximately five months after the Order of Confirmation was signed by the Court, a complaint ("Complaint") was filed on behalf of American General by David L. Ganje, Esq. ("Ganje") requesting that the mortgage lien of American General "be declared a valid outstanding mortgage lien" subject "to the mortgage liens of USDA Rural Housing only in the amount due on said liens as of the date of recording of the Plaintiff's mortgage."[4] *See* "Therefore" clause, incorporating by reference ¶ 8 of the Complaint.

On February 8, 2006, the Debtors filed their answer to American General's complaint and

---

[3] According to the case docket, the deadline for filing a proof of claim was August 16, 2005. (Case Docket No. 3). However, the cases are divided on whether a secured claim holder in a chapter 7 or chapter 13 case is required to file a proof of claim and whether the 90 day deadline from the first date set for the meeting of creditors in applicable. *In re Jensen,* 232 B.R. 118, 121 (Bankr. N.D. Ind. 1999) (citations omitted). Arguably because Gitlin was aware that American General's claim was to be treated as unsecured, he should have timely filed a proof of claim on its behalf in order for it to receive payments under the Plan.

[4] That the Complaint, as drafted by Ganje on behalf of American General, sought a declaration of the validity of its lien, as well as a determination concerning the priority and validity of the lien of the USDA, was clarified by Tang at the hearings on the motion. For example, at the hearing on April 11, 2006, she stated that in connection with the Order of Confirmation, the Court did not actually have to rule on the validity of the claim of the USDA for purposes of allowance and payment by the Trustee through the Plan since the Plan provided for payments to the USDA to be made directly by the Debtors.

asserted two counterclaims. The first counterclaim seeks an Order requiring American General to deliver a Discharge of Mortgage to the Trustee to be held in escrow pending completion of their Plan. Their second counterclaim requests, in the alternative, a determination and judgment by the Court that American General's lien on the Premises is void. It also requests that they be allowed to file a copy of the judgment in the Broome County Clerk's office.

The USDA filed its answer to American General's complaint on February 13, 2006. It contained no counterclaims (Adv. Pro. Docket No. 5). It did assert *res judicata* as an affirmative defense to the relief being sought by American General.

## **ARGUMENTS**

It is American General's position that a determination of the validity and priority of a lien can only be made in the context of an adversary proceeding and not by means of provisions in a chapter 13 plan. Thus, American General contends that *res judicata* only applies to the amount American General is to receive on its claim as a "modified secured creditor" under the terms of the Plan, based on a valuation of the Premises of $45,000, which American General no longer disputes. According to American General, *res judicata* does not prohibit the determination of the validity and priority of the USDA's lien, particularly as it relates to the validity and priority of American General's lien. According to Tang, what American General is seeking is "declaratory relief with respect to the construction, interpretation and implementation of Debtors' confirmed plan with respect to the validity and priority of liens in accordance with the terms of the Confirmation Order . . . ." *See* Opposition to Motion for Default Judgment or Summary

Judgment at ¶ 19 (Adv. Pro. Docket No. 12).  American General takes the position that "allowance of USDA's secured claim could not have been actually or by necessity finally determined by the confirmation of the Debtors' plan."  *See* ¶ 4 of American General's Supplemental Affirmation in Opposition to Motion for Summary Judgment Dismissing Complaint (Adv. Pro. Docket No. 19).  It is the position of American General that the amount of the USDA's allowed claim "must be determined [pursuant to Code § 506] and such amount is clearly not the amount set forth in Defendant USDA's Proof of Claim."  *See* Opposition to Motion for Default Judgment or Summary Judgment at ¶ 21.  American General acknowledges that ultimately its lien may not attach to any property, but under the terms of the USDA's mortgages and the Subsidy Repayment Agreement, it seeks to preserve any rights it may or may not have in the event that the Debtors ultimately sell the Premises and surplus remains after payment of the claim of the USDA.

Although not expressly set forth in its complaint, American General also argues that by virtue of the reamortization agreements executed on May 28, 2004, there was an accord and satisfaction with respect to the prior debt of the USDA, thereby altering its priority and placing the lien of American General ahead of that of the USDA.[5]  *See* Supplemental Affirmation in Opposition to Motion for Summary Judgment Dismissing Complaint at Footnote 1.

The Debtors, as well as the USDA, take the position that if American General had an issue

---

[5] The Court would note that a similar argument was addressed by it some fourteen years ago in *In re Earl*, 147 B.R. 60 (Bankr. N.D.N.Y. 1992).  In that case, the Court considered "the priority of private liens and consensual federal liens arising under FmHA administered loan programs" under circumstances in which promissory notes and a mortgage issued in favor of the FmHA in 1977 and 1978 were later re-amortized in 1986.  Ultimately, based on the facts before it, the Court concluded that "the priority of FmHA's original mortgage liens remains unaffected by the subsequently executed 1986 promissory notes and mortgage."  *Id.* at 65.

with the validity and priority of the lien of the USDA, it had ample opportunity to object to the proof of claim filed by the USDA on May 12, 2005. It directs the Court to the letter of Gitlin on behalf of American General, dated June 2, 2005, in which he requested additional time to determine whether American General's claim was secured, and his letter of July 1, 2005, in which he stated that "it appears that there is no equity to support American General's security . . . ."

## **DISCUSSION**

In considering a motion for summary judgment, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation and quotation marks omitted). The issue before the Court concerns the applicability of *res judicata* to the relief sought by the Debtors in their counterclaims.

Code § 1327(a) provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). As one court commented:

> [t]he true extent of the res judicata effect of a Chapter 13 confirmation order entered pursuant to § 1327(a) is, however, a complex and thorny conundrum which has vexed courts and parties, and on which there is a broad spectrum of diverse opinion.

*In re Strong*, 203 B.R. 105, 113 (Bankr. N.D. Ill. 1996) (citation omitted). The majority of courts

11

hold that a creditor who fails to object to a plan or to appeal a confirmation order is without a basis for challenging a provision of the confirmed plan, even if it is inconsistent with the Code. *See, e.g. Universal Am. Mortgage Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 822 (11th Cir. 2003) (indicating that a secured creditor, who has failed to object to the plan or to appeal from it, cannot collaterally attack a confirmed plan even though it may not comply with the mandatory provisions of the Code); *In re Simpson*, 240 B.R. 559, 562 (8th Cir. BAP 1999) (noting that the "[t]he sum of the judicial decisions that have considered the statutorily binding effect of a confirmed plan of reorganization is that if the confirmed plan treats the creditor, and if the creditor received proper notice of the plan and its proposed confirmation, the creditor's only potential remedy for a plan it doesn't like is to appeal the order of confirmation").

As this Court noted in *Coss,*

> "[a]lthough confirmed plans are res judicata to issues therein, the confirmed plan has no preclusive effect on issues that must be brought by an adversary proceeding, or were not sufficiently evidenced in a plan to provide adequate notice to the creditor." *In re Enewally*, 368 F.3d 1165, 1173 (9th Cir. 2004); *see also Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir.1995) (confirmation of chapter 13 plan is res judicata only as to issues that can be raised in less formal procedure for contested matters, not matters that must be resolved in adversary proceeding); *In re Beard*, 112 B.R. 951, 955-56 (Bankr.N.D.Ind.1990) (if an issue must be raised through adversary proceeding it is not part of confirmation process; absent actual litigation confirmation will not have preclusive effect).

*Coss,* slip op. at 11, quoting *In re Whelton,* 312 B.R. 508, 516 (D. Vt. 2004), *aff'd*, 432 F.3d 150 (2d Cir. 2005).

For *res judicata* to apply in bankruptcy proceedings involving a chapter 13 plan, the Court must consider whether

1) the prior decision was a final judgment on the merits, 2) the litigants were the

> same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same. In the bankruptcy context, we ask as well whether an independent judgment in a separate proceeding would impair, destroy, challenge, or invalidate the enforceability or effectiveness of the reorganization plan.

*In re Layo*, 460 F.3d 289, 292 (2d Cir. 2006), quoting *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 87-88 (2d Cir. 1997).

An order confirming a chapter 13 plan is a final judgment on the merits. *See Layo*, 460 F.3d at 293-94. In addition, no one disputes that this Court had jurisdiction to confirm the Debtors' Plan and that the "litigants" involved in the confirmation of the Debtors' Plan are the same as those appearing in this matter. The critical issue is whether the present counterclaims asserted by the Debtors involve the same "claim" or "nucleus of operative fact" as was before the Court during the confirmation process. As the court in *Layo* noted, the "'critical question for res judicata purposes is whether the party could or should have asserted the claim in the earlier proceeding.'" *Id.* at 292, quoting *In re Howe*, 913 F.2d 1138, 1146 n. 28 (5th Cir. 1990).

The majority of courts have allowed the avoidance of wholly unsecured liens through either the chapter 13 plan confirmation process or by motion. *In re Yekel*, Case No. 305-47107, 2006 WL 2662849, slip op. at *3 (Bankr. D.Or. Sept. 14, 2006) (identifying cases that have allowed the avoidance by either plan confirmation or by motion); *see also In re Bennett*, 312 B.R. 843, 846 (Bankr. W.D.Ky. 2004) (stating that "there does seem to be some consensus that an adversary proceeding is not required [to strip off wholly unsecured liens]"). In those cases, the courts permitted the elimination of the liens based on the value of the collateral but not on the basis of a challenge to their validity, priority or extent. As pointed out by the court in *Bennett*, had a debtor contested the validity, extent or priority of the lien, he/she would have had to

commence an adversary proceeding (*Id.* at 847); otherwise, it is appropriate to seek the relief by motion or as part of the confirmation process. In this regard, the court in *Yekel* found particular favor with *In re King*, 290 B.R. 641 (Bankr. C.D. Ill. 2003). In *King* the court indicated that

> in order to determine whether a second mortgage is wholly unsecured, it is necessary to ascertain not only the value of the secured property, but the amount due on the first mortgage as well. The *determination of the amount of a claim* is also properly a contested matter, unless an objection to the claim includes a demand for relief otherwise covered by Bankruptcy Rule 7001, in which case only then does it become an adversary proceeding. Since both elements of the Section 506(a) bifurcation process, valuation and *claim amount*, are contested matters, that process is properly a part of the Chapter 13 plan confirmation process, and the statutory direction of Section 506(a), that such determination shall be made in conjunction with the hearing on the plan, is entirely consistent with Bankruptcy Rules 3007 and 3012.

*Id.* at 648. (citations omitted) (emphasis supplied).

In its prior decision in *Coss*, the Court indicated "that its conclusion in no way addresses whether a debtor may 'strip off' a lien . . . as part of the confirmation process." *Coss,* slip op. at 14, n.9 (citing *King*, 290 B.R. at 646-47). In *Coss* the debtor's plan expressly provided that secured creditors were to retain their liens and that the issue of the extent of the lien of that particular creditor, i.e. whether the lien attached to just the trailer in which the debtor resided or to the land on which the trailer was situate, was not necessary in order for the Court to have confirmed the debtor's plan.

The Court is now being asked to address that issue. In so doing, the Court begins its analysis by stressing the importance of ensuring that due process is not denied to a creditor such as American General. The fact that the confirmation process in chapter 13 cases occurs usually on an expedited basis is not a license for ignoring the due process rights of creditors. The Court certainly does not condone an approach that for all practical purposes is an attempt by a debtor

14

to "pull the wool over the eyes" of the creditors. It is critical that a debtor provide notice to the affected creditor that comports with due process requirements in order for the creditor to make a conscious decision whether to participate in the process. *Id.* at 649. The "notice must be reasonably calculated to bring to the party's attention the nature and substance of the pending determination, i.e. the extent of the adverse effect on the party's rights (the qualitative aspect), and it must afford a reasonable time in which to respond (the quantitative aspect)." *Id.,* citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also In re Linkous*, 990 F.2d 160, 162 (4th Cir. 1993) (indicating that due process requires that affected parties be apprized on the pendency of the action and that they be afforded an opportunity to present their objections). Courts to have addressed this issue have required not only that the creditor and its claim be identified, the plan must also provide some explanation for the lack of collateral value to support its lien. *King.* 290 B.R. at 649-50, citing *In re Zimmerman,* 276 B.R. 598, 603 (Bankr. C.D. Ill. 2001) (noting that "[t]he burden is squarely on the shoulders of the debtor, as the drafter of the plan, to ensure that its language provides adequate notice of the debtors' intentions and the basis for the proposed lien avoidance"). If the notice is found to be inadequate, the secured property will vest in the debtor on confirmation but will remain subject to the unavoided lien. *Id.; see also In re Friedman*, 184 B.R. 883, 888 (Bankr. N.D.N.Y. 1994), *aff'd* 184 B.R. 890 (N.D.N.Y. 1995) (indicating that "[t]he fact that the Plan has been confirmed will not bar the [creditor] from enforcing its lien even though it failed to object to the Plan's provisions if there has not been proper notice"). At the same time, a confirmed chapter 13 plan is *res judicata* as to all parties that participated in the confirmation process provided there has been adequate notice given to those whose interests are being affected. *See Matter of Howard,* 972 F.2d 639, 641 (5th

Cir. 1992), citing *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987).

In this case, under the heading of "Lien Avoidance," the Debtors' Plan expressly identified American General as a creditor with a claim of $28,532. The Plan indicated that American General held a second mortgage against the Premises and that its claim was wholly unsecured. As a basis for this conclusion, the Court notes that the Plan clearly states in its "liquidation analysis" that the Premises had a market value of $45,000. The Plan does not state the amount due on the USDA mortgages. However, the Confirmation Order does.

The hearing on confirmation of the Debtors' Plan, originally scheduled to be held on June 7, 2005, was adjourned a month in order to give American General, which obviously participated in the confirmation process, an opportunity to confirm the value of the Premises, as well as the amount due on the USDA mortgages. It is evident that Gitlin was familiar with USDA's claim when he stated that "[b]ased upon the claim of the government, it appears that there is no equity to support American General's security in the home" and indicated that American General would not be objecting to confirmation of the Debtors' Plan and the treatment of its claim, including the proposed "strip off" of its lien. Failure of a secured creditor to make a timely objection to confirmation results in the creditor being deemed to have accepted the plan. *In re Szostek*, 886 F.2d 1405, 1413 (3d Cir. 1989).

The USDA had timely filed its proof of claim prior to confirmation of the Debtors' Plan. As this Court previously noted in *Friedman*, "unless an objection is filed pursuant to Fed.R.Bankr.P. 3007, a plan may not affect the validity or amount of a secured claim in the situation where a proof of claim has been timely filed." *Friedman*, 184 B.R. at 887 (citations omitted). Neither the Debtor nor American General objected to the claim of the USDA prior to

confirmation. In this case, American General clearly had notice of the Debtors' Plan, as well as the claim of the USDA, before it opted not to object to the confirmation of the Debtors' Plan, which included the provision voiding its lien.

The Debtors' Plan was confirmed on August 3, 2005, and it was not until January 9, 2006, some five months later, that Ganje, on behalf of American General, filed the complaint seeking a determination of the validity and priority of the lien of the USDA. Under the circumstances, the Court views this as simply an attempt to collaterally attack the confirmation of the Debtors' Plan. A party with adequate notice of a bankruptcy proceeding ordinarily cannot attack a confirmed plan. *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000). As the court in *Harvey*, explained,

> [t]he reason for this is simple and mirrors the general justification for res judicata principles - - after the affected parties have an opportunity to present their arguments and claims, it is cumbersome and inefficient to allow those same parties to revisit or recharacterize the identical problems in a subsequent proceeding. * * * This is especially true in the bankruptcy context, where a confirmed plan acts more or less like a court-approved contract or consent decree that binds both the debtor and all the creditors. Bringing the various creditors' interests to the table once is difficult enough; permitting one of the creditors to launch a later attack on a confirmed plan would destroy the balance of interests created in the initial proceedings.

*Id.*

As discussed above, American General, at the time it was represented by Gitlin, had notice of the Debtors' Plan and the fact that the Debtors' Plan provided that its lien be avoided and that American General was to prepare and submit to the Trustee an executed Discharge of Mortgage to be held in escrow by the Trustee until completion of the Debtors' Plan. It had an ample opportunity to review not only the Debtors' Plan, but also the proof of claim of the USDA, which included copies of its mortgages, promissory notes, reamortization agreements and the Subsidy

17

Repayment Agreement executed by the Debtors. Since Gitlin was provided with information concerning USDA's interest in the Premises, he was under a duty to make diligent inquiry in order to clarify the nature of that interest. *Layo*, 460 F.3d at 293.

The originally scheduled confirmation hearing on the Debtors' Plan was adjourned at Gitlin's request in order to given him an opportunity to review these materials. If he had any concerns regarding the value of the Premises and the amount of the USDA's claim, as well as the provision requiring that American General execute a Discharge of Mortgage to be held by the Trustee in escrow pending completion of the Debtors' Plan, he had every opportunity to raise those concerns and to object to it. Instead, upon review of the documents, he indicated that he, on behalf of American General, had no objection to the Debtor's Plan.

It was only after new counsel was retained by American General that it filed its objection to the claim of the USDA by commencing an adversary proceeding some five months after confirmation of the Debtors' Plan. While American General is now attempting, through the efforts of its third attorney, to raise questions concerning the validity, and perhaps priority, of the claim of the USDA, as well as the validity of its own lien, the fact of the matter is that under the terms of the Debtors' Plan, it no longer has a valid lien. The validity and amount of the USDA claim, to which there was no objections filed by either the Debtors or American General, was previously determined in connection with confirmation of the Debtors' Plan. Arguably, if American General had not participated in the confirmation process, questions of notice and due process might weigh in its favor. However, where it received more than reasonable notice and participated in the confirmation process, *res judicata* applies, and the Court concludes that the

18

Debtors' motion seeking summary judgment on First Counterclaim should be granted.[6]  In addition, this conclusion renders the complaint filed by American General, seeking a determination of the validity of its lien, moot.  Accordingly, it will be dismissed.

Based on the foregoing, it is hereby

ORDERED that the motion for summary judgment on the Debtors' First Counterclaim, requiring that American General execute a Discharge of Mortgage to be held by the Trustee in escrow pending completion of the Debtors' Chapter 13 case be granted; and it is further

ORDERED that the complaint of American General is dismissed on the basis of its being moot.

Dated at Utica, New York

this 12th day of December 2006

/s/   Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge

---

[6] The Debtors' Second Counterclaim is pled in the alternative.  Because the Court is granting their First Counterclaim, the Court believes it is unnecessary and inappropriate under the circumstances to grant the Second Counterclaim, which requests a judgment against American General.